UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. 8:24-cv-02755-MWC-KES                                                      Date: February 14, 2025

Title:  ASHLEY CLARKE v. ORANGE COUNTY SOC. SERV. AGENCY., ET AL.

PRESENT:

<u>THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE</u>

| <u>Jazmin Dorado</u> | <u>Not Present</u> |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**   Order DISMISSING Complaint (Dkt. 1) with Leave to Amend

## I.   INTRODUCTION

On December 12, 2024, Ashley Clarke ("Plaintiff") filed a <u>pro</u> <u>se</u> civil rights complaint raising constitutional claims under 42 U.S.C. § 1983 and state law tort claims.

28 U.S.C. § 1915(a)(1) allows district courts court to grant plaintiffs leave to proceed in forma pauperis ("IFP") and waive the filing fee if they cannot afford it.  However, the statute also requires the court to "dismiss the case at any time if the court determines that" the case is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

The Court has reviewed the operative Complaint (Dkt. 1) and, for the reasons explained below, finds that it fails to state a claim against any of the Defendants.  The Complaint is therefore dismissed with leave to amend.

## II.   SUMMARY OF COMPLAINT

### A.   <u>Factual Allegations.</u>

Plaintiff is suing the County of Orange ("County"), which operates the Orange County

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-02755-MWC-KES                          Date: February 14, 2025
                                                          Page 2

Social Services Agency ("SSA"), and five social workers employed by SSA in their individual and official capacities: (1) Maria Uyesugi; (2) Crystal Sanchez; (3) Lauri Luchonok; (4) Stephanie Da Luna; and (5) Lourdes Vazquez.

      Plaintiff alleges that a few days before January 16, 2021, she gave birth to a baby girl, M.C., in an unnamed hospital. (Dkt. 1 at 7.) Plaintiff's claims generally arise from the decision of Defendant Uyesugi to remove M.C. from Plaintiff's custody on an emergency basis, Plaintiff's subsequent attempts to demonstrate compliance with a family reunification plan, and the Orange County Superior Court ("OCSC")'s eventual decision to terminate her parental rights, a decision upheld on appeal in In re M.C., No. G062205, 2023 WL 5158949 (Cal. Ct. App. Aug. 11, 2023), as modified on denial of reh'g (Sept. 8, 2023).[1]

      The factual allegations against each Defendant are summarized as follows:

- Defendant Uyesugi: Plaintiff alleges that Defendant Uyesugi completed an in-person contact intake report with Plaintiff shortly after M.C. was born, but it is unclear if/how this was done wrongfully. (Dkt. 1 at 7.) Defendant Uyesugi allegedly removed M.C. from Plaintiff's custody without providing Plaintiff "any explanation or opportunity to be heard" pre-removal. (Id.) She submitted an affidavit to support the emergency seizure, but the affidavit did not contain "first-hand knowledge of the events leading to the seizure and relied solely on unspecified reports." (Id. at 7-8.)

- Defendant Sanchez: Plaintiff alleges, "When testifying on her observation or parent and child bond, lack of proper investigation and lack of home assessment." (Id. at 4.) Plaintiff claims to have given Ms. Sanchez a therapist report in January 2022 and a completion certificate from individual counseling sessions. (Id. at 8.) Allegedly, Defendant Sanchez "repeatedly told [Plaintiff] that as she completed the required services, she would be granted increased visitation time with her child …." (Id. at 10.) Instead, "Plaintiff's requests for more weekly visitation time were continually denied by Defendant Sanchez, who insisted that the plaintiff had to first complete the services." (Id.) This caused her to lose "approximately 85 hours of visitation time with [M.C.]" (Id.) Plaintiff also alleges that Defendant Sanchez provided testimony in December 2022 "without having observed any in-person interactions between" Plaintiff and M.C. (Id. at 13.)

---

      [1] The California Court of Appeal conditionally reversed and remanded the case, but only to allow SSA to comply with the Indian Child Welfare Act ("ICWA"). Since then, the Court of Appeal has ruled on the ICWA issues and has made a final decision to affirm the OCSC's order terminating Plaintiff's parental rights over M.C. In re M.C., No. G064088, 2024 WL 4160399 (Cal. Ct. App. Sept. 12, 2024).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-02755-MWC-KES                                                                 Date: February 14, 2025
                                                                                                                        Page 3

- <u>Defendant Luchonok</u>: Plaintiff is suing Defendant Luchonok for "[r]eports, lack of proper investigation and lack of first-hand knowledge." (Dkt. 1 at 4.) In February 2021, Plaintiff gave Defendants Luchonok and Vasquez a stack of letters from witnesses "attesting to [Plaintiff's] parenting abilities and skills" but this evidence "appears to have been disregarded … but was briefly mentioned in a report." (<u>Id.</u> at 13.)

- <u>Defendant Da Luna</u>: The complaint has only one short paragraph about Defendant Da Luna. Plaintiff is suing her for reporting her observations of Plaintiff and M.C. despite a "lack of proper investigation." (Dkt. 1 at 5.) She is also suing Defendant Da Luna for "suppression of evidence." (<u>Id.</u>)

- <u>Defendant Vazquez</u>: Plaintiff alleges that Defendant Vazquez "fil[ed] false investigation reports with the courts" due to "lack of proper investigation and not following proper procedures." (<u>Id.</u> at 5.)

- <u>Defendant County of Orange</u>: Plaintiff alleges that the County failed to "properly train and supervise the individual defendant social workers, which led to the constitutional violations." (Dkt. 1 at 16-17.)

**B.      Legal Theories and Remedies.**

Plaintiff brings numerous constitutional claims. (<u>Id.</u> at 14-16, 18-21.) She brings claims under the Fourteenth Amendment's Due Process Clause alleging deprivations of her substantive due process right to familial relationships and her procedural due process rights in the state court dependency proceedings. (<u>Id.</u> at 14-15, 20.) She also brings a claim under the Fourteenth Amendment's Equal Protection Clause, although she does not allege what protected class, if any, to which she belongs. (<u>Id.</u> at 16, 20-21.) She also alleges a violation of her First Amendment right of association and her Fourth Amendment right to be free of unreasonable governmental searches and seizures. (<u>Id.</u> at 14.) She alleges that the County is liable under § 1983 for the actions of the Defendant Social Workers because the County failed to train and/or supervise them as required. (<u>Id.</u> at 16-17.) Plaintiff also brings various state law tort claims, including intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress. (<u>Id.</u> at 17-18.)

Plaintiff asks the district court to "order the immediate return of M.C. to Plaintiff's custody." (<u>Id.</u> at 22.) She also seeks monetary damages, both compensatory and punitive, against all Defendants. (<u>Id.</u>)

Case 8:24-cv-02755-MWC-KES     Document 6     Filed 02/14/25     Page 4 of 16     Page ID #:34

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-02755-MWC-KES                                                                                  Date: February 14, 2025
                                                                                                                                              Page 4

### III.     ANALYSIS OF PLEADING DEFECTS

This screening order does not attempt to catalog every pleading defect. Rather, it identifies those that are sufficient to dismiss the entire Complaint with leave to amend and explains what additional facts Plaintiff would need to allege to state a claim.

####     A.     <u>Social Worker Immunity.</u>

#####          1.     **Legal Standard.**

Most of Plaintiff's claims are against social workers. Social workers enjoy absolute immunity for certain kinds of actions, but they are not immune from liability for "judicial deception." Specifically, social workers are entitled to absolute immunity when performing "quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." <u>Meyers v. Contra Costa Cnty. Dept. of Soc. Servs.</u>, 812 F.2d 1154, 1157, certiorari denied 484 U.S. 829 (9th Cir. 1987) [hereinafter <u>Meyers</u>] (citations omitted). The <u>Meyers</u> Court explained the reasoning behind this as follows:

> Although child services workers do not initiate criminal proceedings, their responsibility for bringing dependency proceedings, and their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the responsibility of a criminal prosecutor. The social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit.

<u>Id.</u>

On the other hand, individuals in juvenile dependency cases have a constitutional right under the Due Process Clause "to be free from deception in the presentation of evidence." <u>Rieman v. Vazquez</u>, 96 F.4th 1085, 1093(9th Cir. 2024) (as amended); <u>Benavidez v. Cnty. of San Diego</u>, 993 F.3d 1134, 1146 (9th Cir. 2021) (recognizing a right "to be free from judicial deception and fabrication of evidence in the context of civil child custody cases"). While social workers are sometimes entitled to absolute immunity from private lawsuits as discussed above, they are not entitled to immunity "from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute." <u>Rieman</u>, 96 F.4th at 1090 (citation omitted). "'Reporting that a witness said something he or she did not cannot reasonably be characterized as a recording error or a

Case 8:24-cv-02755-MWC-KES  Document 6  Filed 02/14/25  Page 5 of 16  Page ID #:35

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:24-cv-02755-MWC-KES                                                    Date: February 14, 2025
                                                                                                              Page 5

misstatement,' but is instead fabricated evidence." Benavidez, 993 F.3d at 1146 (citation omitted).

A plaintiff must show three things to allege a claim based on judicial deception "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." Rieman, 96 F.4th at 1093-94 (citation omitted). A misrepresentation or omission is "material" if a court "would have declined to issue the order had [the defendant] been truthful." David v. Kaulukukui, 38 F.4th 792, 801 (alteration in original) (citation omitted). To comply with the heightened pleading standard described in Federal Rule of Civil Procedure 9(b), a judicial deception claim must be stated "with particularity" by alleging "the who, what, when, where, and how" of the judicial deception. Benavidez, 993 F. 3d at 1148 (citation omitted); see also Vaezi v. Stanley, No. 21-56273, 2023 WL 142651, at *2 (9th Cir. Jan. 10, 2023) ("claims for judicial deception must comport with the pleading standards found in Rule 9(b)").

2.    **Analysis.**

Some of Plaintiff's allegations against the Social Worker Defendants appear to attack quasi-prosecutorial functions, such as the decision to initiate dependency proceedings over M.C. Other allegations fall short of alleging that the Social Worker Defendants presented false evidence, claiming instead that they should have investigated differently or weighed the evidence differently in reaching their conclusions. Such allegations, without more details and context, are insufficient to allege judicial deception.

The Complaint alleges that Defendant Vasquez filed "false investigation reports with the courts." (Dkt. 1 at 5.) This allegation, however, fails to meet the heightened pleading standard described above. Plaintiff does not identify (1) to what reports she is referring; (2) what statements were allegedly false; or (3) what facts tend to show those statements were false. In essence, the Complaint is missing the "what, when, where, and how."

Thus, the Complaint has failed to state a judicial deception claim.

B.    **Statute of Limitations.**

1.    **Legal Standard.**

California's two-year statute of limitations for personal-injury claims applies to claims brought under § 1983 in California. Pouncil v. Tilton, 704 F.3d 568, 573 (9th Cir. 2012); see also Cal. Code Civ. Proc. § 335.1. Federal law governs when the statute of limitations starts running. A claim accrues when the plaintiff "knows or has reason to know of the injury that is the basis of the action." Belanus v. Clark, 796 F.3d 1021, 1025 (9th Cir. 2015). Normally, an action accrues on the date of the injury. Pouncil, 704 F.3d at 574. This applies to Fourth Amendment claims as well. See Packwood v. Cnty. of Contra Costa, No. 23-cv-01003-MMC,

Case 8:24-cv-02755-MWC-KES Document 6 Filed 02/14/25 Page 6 of 16 Page ID #:36

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:24-cv-02755-MWC-KES                                               Date: February 14, 2025
Page 6

2024 WL 1340615, 2024 U.S. Dist. LEXIS 60058, at *6 (N.D. Cal. Mar. 22, 2024), aff'd No. 24-1760, 2024 WL 444223 (9th Cir. Feb. 10, 2025) ("A claim asserting a Fourth Amendment violation is subject to a two-year statute of limitations and accrues on the date the act allegedly constituting the deprivation occurred.").

When a complaint alleges facts showing that a claim is time-barred, the plaintiff must plead facts showing that some exception to the statute of limitations applies. See Patrick v. Cty. of Los Angeles, No. 22-cv-02846, 2022 WL 17218070, 2022 U.S. Dist. LEXIS 215045, at *9 (C.D. Cal. Aug. 29, 2022) ("If Plaintiff believes that this action is not time-barred and wishes to continue pursuing this case, Plaintiff must include sufficient facts in any amended complaint to show that this action is not time-barred.") (citation omitted). One such exception may be tolling. Young v. Perez, No. 15-cv-00456, 2016 U.S. Dist. LEXIS 106537, at *4 (C.D. Cal. Jun. 5, 2016). While federal law governs when a claim accrues, state law tolling rules apply. Id. (citing Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004)). California offers tolling for a variety of reasons, including being imprisoned or mentally impaired. Cal. Civ. Proc. Code §§ 352, 352.1(a).

**2.    Analysis.**

Plaintiff filed the Complaint on December 20, 2024. (Dkt. 1.) Claims arising before December 20, 2022 therefore appear time-barred. The Complaint references numerous events that happened in 2021 and 2022, including (1) the emergency removal of M.C. and Defendant Uyesugi's affidavit/testimony in support of that removal; (2) the testing of M.C.'s stool sample in the hospital after her birth without Plaintiff's consent; (3) M.C.'s placement in a foster home where Plaintiff contends there was negligent supervision; (4) Defendants Vasquez and Luchonok not giving proper consideration to Plaintiff's character reference letters; and (5) 2022 testimony about parental bonding that Plaintiff characterizes as insufficiently supported by direct observations. (Dkt. 1 at 13.) Plaintiff has not pled facts to show why tolling or some other exception to the statute of limitations applies to claims based on events that occurred before December 20, 2022.

Plaintiff does allege that she spent time pursuing other avenues of relief before filing suit in federal district court. Plaintiff states that she has "diligently pursued all available state-level remedies" before bringing her case to federal court, but she "was met with roadblocks at every turn." (Id. at 6.) These efforts include "an appeal of the termination of her parental rights," contacting state representatives to seek "their assistance in addressing the issues in her case," seeking an investigation into "the alleged fraud and irregularities surrounding the Title IV-D funding" from the state's "foster care ombudsman," filing "multiple Freedom of Information Act … requests with the social serviced department" in an attempt to obtain "records related to her social worker's caseload and the department's practices," and seeking "to obtain a certified copy of the termination order." (Id. at 6-7.)

Plaintiff has not identified any California law that would provide tolling for these

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-02755-MWC-KES  Date: February 14, 2025
Page 7

activities.

### C. The Rooker-Feldman Doctrine.

#### 1. Legal Standard.

The Rooker-Feldman doctrine generally applies to cases filed "by state-court losers complaining of injuries caused by state-court judgments ... and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). The doctrine springs from the fact that "lower federal courts possess no power whatever to sit in direct review of state court decisions." D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 483 (1983). Where the Rooker-Feldman doctrine applies, federal district courts lack subject matter jurisdiction. Id. at 486-87.

The Rooker-Feldman doctrine applies when a litigant is pursuing a "de facto appeal" of a state court decision. Boudette v. Oskerson, No. 22-36003, 2024 WL 1342613, 2024 U.S. App. LEXIS 7473 at *2 (9th Cir., Mar. 29, 2024) (quoting Noel v. Hall, 341 F.3d 1148, 1163 (9th Cir. 2003)). It also applies when a complaint brings federal claims that are "inextricably intertwined" with the state court's decision. See District of Columbia Court of Appeals, 460 U.S. at 483 ("If the constitutional claims presented to a United States district court are inextricably intertwined with the state court's [decision], then the district court is in essence being called upon to review the state-court decision. This the district court may not do.").

#### 2. Analysis.

The OCSC terminated Plaintiff's parental rights, and that decision was upheld on appeal in September 2024. In re M.C., 2023 WL 5158949; see also In re M.C., 2024 Cal. App. Unpub. LEXIS 5708. In December 2024, Plaintiff file the Complaint asking the district court to overrule the California courts' custody decision and award her custody of M.C. (Dkt. 1 at 22.) This is a de facto appeal. This Court lacks jurisdiction to award such relief.

The emergency removal of M.C. was also already litigated in the state courts. (Dkt. 1 at 8 (referring to post-removal hearing on January 25, 2021).) It is unclear whether Petitioner challenged the constitutionality of Defendant Uyesugi's actions in those proceedings and the reasons the OCSC gave for upholding the removal. Claims asking the district court to "reverse" the state court's rulings on this matter may be also be de facto appeals.

It is unclear if Plaintiff is challenging orders by the OCSC governing visitation or how the Social Worker Defendants implemented those orders. If Plaintiff is challenging the OCSC's orders establishing visitation rights, such claims present a Rooker-Feldman problem.

Similarly, Plaintiff seems to be challenging orders by the OCSC admitting certain evidence and denying her Marsden motion after she raised concerns about the performance of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:24-cv-02755-MWC-KES　　　　　　　　　　　　　　　Date: February 14, 2025
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 8

appointed counsel. (Dkt. 1 at 11-12.) To the extent Plaintiff is asking this Court to find that the OCSC erred in its rulings, such claims present a Rooker-Feldman problem.

### D.　Uncertain Allegations of Which Defendants Committed Which Actions.

#### 1.　Legal Standard.

A complaint must make it clear which facts apply to which claims. Rojas v. Rizendine, No. 18-cv-1935, 2021 WL 1295361, 2021 U.S. Dist. LEXIS 67703, at *4-5 (E.D. Cal. Apr. 6, 2021). A complaint also must describe which defendants are responsible for which actions or deprivations. Latham v. Pollard, No. 20cv2177, 2021 WL 5359403, 2021 U.S. Dist. LEXIS 222180, at *22 (S.D. Cal. Nov. 17, 2021).

To comply with Rule 8 of the Federal Rules of Civil Procedure, "[a] plaintiff who sues multiple defendants must allege the basis of his claim against each defendant." Culinary Studios, Inc. v. Newsom, 517 F. Supp. 3d 1042, 1074 (E.D. Cal. 2021). In other words, a pleading must "allege what role each Defendant played in the alleged harm." Id. (citing Inman v. Anderson, 294 F. Supp. 3d 908, 919 (N.D. Cal. 2018)). This requirement ensures that each defendant is given fair notice of what claims they are facing and the grounds upon which they rest. See Gen-Probe, Inc. v. Amoco Corp., Inc., 926 F. Supp. 948, 961 (S.D. Cal. 1996) (noting that "lumping together of multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)") (citing Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).

In a § 1983 case involving a government agency and government actors in their individual capacities, "'it is particularly important … that the complaint makes clear exactly who is alleged to have done what to whom, [in order] to provide each individual with fair notice[.]'" Salcido v. County of Madera, No. 10-cv-195, 2010 U.S. Dist. LEXIS 121563, at *7, 2010 WL 4878809, at *3 (E.D. Cal. Nov. 16, 2010) (quoting Bryson v. Gonzales, 534 F.3d 1282, 1290 (10th Cir. 2008)); see also Wong v. United States INS, 373 F.3d 952, 967 (9th Cir. 2004). Thus, a complaint "may not attribute liability to a group of defendants but must "set forth specific facts as to each individual defendant's" deprivation of his rights." Hallal v. Seroka, No. 18-cv-388, 2018 U.S. Dist. LEXIS 121871, at *6, 2018 WL 3528709, at *3 (E.D. Cal. July 20, 2018) (quoting Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988)). This is because § 1983 requires "a showing of personal participation in the alleged rights deprivation." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

#### 2.　Analysis.

Plaintiff alleges the unnamed hospital where she gave birth took a stool sample from M.C. and completed a toxicology screening without Plaintiff's consent, constituting an unconstitutional search and seizure under the Fourth Amendment. (Id. at 8-9.) The toxicology test must have been positive for illegal drugs, because Plaintiff argues that the testing laboratory was too far away from California to produce reliable results. (Id.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-02755-MWC-KES                                    Date: February 14, 2025
                                                                  Page 9

It is unclear what role, if any, which Defendants played in the decision to have M.C.'s stool tested. It is similarly unclear what role, if any, which Defendants played in Plaintiff's complaints about visitation. Plaintiff blames "the caseworker's decision to assign visitation to a center" for causing her to miss "approximately 85 hours of visitation time" with her daughter, but it is unclear who the caseworker was and how this decision affected visitation time (as opposed to things beyond Defendants' control, like the travel schedule of M.C.'s foster family). (Dkt. 1 at 10.) Plaintiff also claims that she was deprived "of the opportunity to meaningfully celebrate" her daughter's second birthday because she was only granted a one-hour goodbye visit, but it's unclear who was responsible for determining the length of the visit. (Id.) Similarly, Plaintiff challenges a policy of not allowing M.C.'s half-sister to participate in visits with M.C., but she does not allege who was responsible for that policy (other than possibly "the social worker handling M.C.'s case"), and she admits that the policy was not always enforced. (Dkt. 1 at 11.)

Additionally, Plaintiff alleges that at the Marsden hearing, "she explained on the record that she had provided her attorney and [Defendants De Luna, Vazquez, Luchonok, and Sanchez] with numerous documents and evidence demonstrating her compliance with the state's requests and the positive progress she had made." (Id. at 11.) She alleges that her attorney, however, "failed to properly submit or address this evidence in the court proceedings." (Id.) It is unclear if this is the evidence that was allegedly "suppressed" by the Social Worker Defendants and what she contends they should have done when Plaintiff's own attorney did not present the evidence.

Ultimately, these allegations are insufficient to give the Social Worker Defendants notice of the acts or omissions over which they are being sued.

    **E.**    **First Amendment Association Claims.**

        **1.**    **Legal Standard.**

The First Amendment does protect "family relationships, that presuppose 'deep attachments and commitments to the *necessarily few* other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" Keates v. Koile, 883 F.3d 1228, 1236 (9th Cir. 2018) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir. 2001)) (emphasis added). The Ninth Circuit has held that "claims under both the First and Fourteenth Amendment for unwarranted interference with the right to familial association could survive a motion to dismiss." Id. (citing Lee, 250 F.3d at 686). "[T]he Fourteenth, First, and Fourth Amendments provide a guarantee 'that parents will not be separated from their children without due process of law except in emergencies.'" Id. (citing Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1107-09 (9th Cir. 2001)). "Such 'reasonable cause' arises, for example, where there is evidence of imminent abuse after sufficient investigation." Id. (quoting Rogers v. County of San Joaquin, 487 F.3d 1288, 1294-95 (9th Cir. 2007)). The First Amendment right to association also applies to cohabitating sibling relationships. See Villasanti v. Cnty. of Riverside, 717 F.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:24-cv-02755-MWC-KES | Date: February 14, 2025 |
| | Page 10 |

Supp. 3d 909, 920 (C.D. Cal. 2024).

    **2.**    **Analysis.**

Assuming the Complaint pleads facts sufficient to show that Plaintiff and M.C. have an established bond that qualifies for First Amendment protections, the Complaint fails to state a claim that this right has been violated. The Ninth Circuit has held that emergency situations create an exception to the First Amendment right to the parent-child relationship. Keates, 883 F.3d at 1236. The Complaint does not include facts sufficient to show that the initial removal of M.C. from Plaintiff's custody was not done as an emergency. To the extent Plaintiff is challenging the later determinations by the OCSC that she (1) had not met the requirements for reunification and consequently (2) would lose her parental rights, such claims appear to be a de facto appeal of state court rulings.

    **F.**    **Procedural Due Process Versus Substantive Due Process.**

As a matter of substantive due process, a parent does have a constitutionally protected interest in both the custody and care of his or her children, although this interest is not absolute. Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir. 1991). Procedural due process generally refers to the fairness of government adjudicative proceedings. In the Complaint, it is often unclear when Plaintiff alleges a violation of her substantive due process rights versus her procedural due process rights.

    **1.**    **The Emergency Removal of M.C.**

To the extent Plaintiff alleges lack of notice and an opportunity to be heard in connection with the emergency removal of M.C., she is trying to bring a procedural due process claim. The Complaint, however, lacks sufficient facts to support such a claim.

California law provides for a post-deprivation hearing where a child is removed from the home without a pre-deprivation hearing due to an emergency. Cal. Wel. & Inst. Code § 319. At the post-deprivation hearing, the court is required to review a report created by the social worker and "examine the child's parents, guardians, Indian custodian, or other persons having relevant knowledge and hear the relevant evidence." Id. The court may also examine the child. Id. The social worker's report must contain the reasons why the child was removed from the parent or guardian's custody, the need for any continued detention, the services available "that could facilitate the return of the child to the custody of the child's parents, guardians, or Indian custodian," and if "there are any relatives who are able and willing to take temporary physical custody of the child." Id. The report should also include any harms that may come to the child if the child stays in the parent or guardian's custody. Id. The court is required to consider a wide variety of factors in determining whether the child should be returned to the parent's custody, such as whether the parent or guardian is likely to flee, whether any harm may come to the child, whether the child expresses an unwillingness to return to the home, and whether there are any

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-02755-MWC-KES                                              Date: February 14, 2025
                                                                                                        Page 11

less disruptive alternatives.  Id.

"If a court orders a child detained, the court shall state the facts on which the decision is based, specify why the initial removal was necessary, reference the social worker's report or other evidence relied upon to make its determination whether continuance in the home of the parent or legal guardian is contrary to the child's welfare, order temporary placement and care of the child to be vested with the county child welfare department pending the hearing held pursuant to Section 355 or further order of the court, and order services to be provided as soon as possible to reunify the child and their family, if appropriate."  Id. § 319(g).

The Complaint admits that this post-deprivation hearing occurred.  (Dkt. 1 at 8.)  It is unclear if Plaintiff is alleging that California's procedures authorizing emergency removal are unconstitutional, or if she is alleging that one or more Defendants failed to follow California's procedures.  Either way, the Complaint lacks facts sufficient to support this claim.

### G.     M.C.'s Placement in Foster Care and Possible Neglect.

#### 1.     Legal Standard.

"The Fourteenth Amendment substantive due process clause protects a foster child's liberty interest in social worker supervision and protection from harm inflicted by a foster parent."  Tamas v. Dep't of Soc. & Health Servs., 630 F.3d 833, 842 (9th Cir. 2010) (citations omitted).  "To violate due process, state officials must act with such deliberate indifference to the liberty interest that their actions 'shock the conscience.'"  Id. at 844 (citation omitted).  "[T]he deliberate indifference standard, as applied to foster children, requires a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference."  Id. at 845 (citations omitted).  "[T]he facts known at the time [must] reasonably reveal[]" the risk at issue to officials.  Cox v. Dep't of Soc. and Health Servs., 913 F.3d 831, 838 (9th Cir. 2019).

#### 2.     Analysis.

The Complaint fails to state a substantive due process claim regarding M.C.'s treatment in her foster home.  First, it is unclear when the various incidents at the foster home happened and which Social Worker Defendants, if any, were assigned to M.C.'s case at the time.

Plaintiff claims that her daughter was harmed in foster care because she "had to be fitted for a medical helmet due to the flattening of the back of her head" and the development of a "lazy eye condition that could have been corrected through proper treatment" and led to M.C.'s need to wear glasses.  (Dkt. 1 at 9.)  However, these injuries are not so extreme as to show "that a substantial risk of serious harm existed," nor does this show that "a reasonable official would

Case 8:24-cv-02755-MWC-KES     Document 6     Filed 02/14/25     Page 12 of 16     Page ID #:42

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-02755-MWC-KES                                                    Date: February 14, 2025
                                                                                                              Page 12

have been compelled to draw that inference.  See Tamas, 630 F.3d at 845.  The facts suggest that, once the foster family learned of these health concerns, the family was diligent in obtaining the necessary treatment.  Reviewing these records, it would be reasonable for a social worker to conclude that M.C. was not at risk of serious harm.  The injury to M.C.'s fingers when she cut them on the leaf of the table also do not demonstrate significant neglect.  Plaintiff has not alleged sufficient facts to show this was an atypical injury that would result from abuse or neglect as opposed to an accidental injury that might happen even to a well-supervised toddler.

### H.     Monell Liability Against the County.

#### 1.     Legal Standard.

Section 1983 suits against local governments alleging constitutional rights violations by government officials cannot rely solely on respondeat superior liability.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978); Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007).  Instead, plaintiffs must establish that "the local government 'had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation [they] suffered.'"  Id. (quoting Galen v. Cnty. of Los Angeles., 477 F.3d 652, 667 (9th Cir. 2007)).

A policy is a "deliberate choice to follow a course of action … made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Fairley v. Luman, 281 F.3d 913, 918 (9th Cir. 2002) (per curiam) (internal citations omitted).  Municipal liability may attach when an employee acts pursuant to an "expressly adopted official policy," or where an employee committed a constitutional violation pursuant to a "longstanding practice or custom."  Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004); see also Webb v. Sloan, 330 F.3d 1158, 1164 (9th Cir. 2003), cert. denied, 540 U.S. 1141 (2004).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996), holding modified on other grounds by Navarro v. Block, 250 F.3d 729 (9th Cir. 2001).

In order to establish liability for a governmental entity under Monell, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."  Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011).  "Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely."  Id. (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989)). A failure to supervise can amount to "deliberate indifference" if the failure is "sufficiently inadequate."  Id. (quoting Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-02755-MWC-KES                                          Date: February 14, 2025
                                                                                                     Page 13

### 2. Analysis.

The Complaint fails to "specify the [County] content of the policies, customs, or practices the execution of which gave rise to Plaintiffs' constitutional injuries." Winger v. City of Garden Grove, No. SACV 13-0267, 2013 U.S. Dist. LEXIS 203817, at *9, 2013 WL 12376992, at *3 (CD Cal. Aug. 12, 2013) (citation omitted).

Plaintiff does conclusorily allege that the County failed to "properly train and supervise the individual defendant social workers." (Dkt. 1 at 16.) However, this is not enough to state a Monell claim. What should the County have trained them to do when handling child removal cases? What actions should it have trained them to avoid doing? How did the lack of training cause any of the events that harmed Plaintiff? Similarly, Plaintiff's contention that the County failed to supervise them properly lacks key information. (Id.) What kind of supervision was lacking? What would have happened with different or better supervision? How did the lack of supervision harm Plaintiff?

Plaintiff also alleges that "the evidence shows that the social workers involved in the plaintiff's case, including Maria Uyesugi, were not properly licensed or qualified to perform their duties under California law" and lacked the "proper credentials and training." (Dkt. 1 at 16.) This is not enough to establish Monell liability. The Complaint does not include any information about which credentials they lacked and how this relates to the "policies, customs, or practices" of the County. Winger, 2013 WL 12376992, at *3.

### I. State Tort Claims.

### 1. Legal Standard.

Under the California Government Claims Act, a person must present his personal injury claim to a public entity within six months of the accrual of the claim. Cal. Gov't Code § 911.2. All tort claims seeking monetary damages from a public entity or public employees are subject to this claim presentation requirement. Kern v. Sacramento Cnty. Main Jail, No. 24-cv-2615, 2025 U.S. Dist. LEXIS 24649, at *11 (E.D. Cal. Feb. 10, 2025). A plaintiff bringing such tort claims must plead compliance with the California Government Claims Act in order to state a claim. Shirk v. Vista Unified School Dist., 42 Cal.4th 201, 209 (2007), as modified (Oct. 2007).

### 2. Analysis.

The Complaint includes state law tort claims. (Dkt. 1 at 16-18.) The Complaint, however, does not allege that Plaintiff ever presented a government claim to the County about these torts. Without this allegation, all of her state law tort claims fail.

### IV. CONCLUSION.

IT IS HEREBY ORDERED that the Complaint (Dkt. 1) is **dismissed** with leave to

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. 8:24-cv-02755-MWC-KES | Date: February 14, 2025 |
| | Page 14 |

amend.  **On or before March 17, 2025**, Plaintiff shall respond to this order by filing **one** of the following:

1. File a First Amended Complaint ("FAC") that attempts to fix the problems discussed in this order.  If Plaintiff chooses to file a FAC, it should bear the docket number assigned to this case (8:24-cv-02755-MWC-KES) and be labeled "First Amended Complaint."  The FAC will replace and supersede the Complaint and should therefore be complete in and of itself without referring to prior complaints or any other documents (except any documents that Plaintiff may choose to attach as exhibits).

2. If Plaintiff disagrees with the analysis in this screening order and/or believes that he cannot add any more factual allegations to her Complaint, then she may file a Notice of Intent Not to File an Amended Complaint.  If Plaintiff chooses to file such a notice, then the Magistrate Judge may recommend that the District Judge dismiss the Complaint without further leave to amend.

**If Plaintiff fails to timely respond to this order by exercising one of these options, this action may be dismissed for lack of prosecution.**[2]

A party proceeding pro se must keep the Court informed of the party's current address.  Local Rule 41-6.  If mail sent by the Court to Plaintiff is returned as undeliverable, and Plaintiff fails to file a notice of change of address within 14 days after the date when the Court mailed undeliverable document, then the Court may dismiss the action for failure to prosecute.  Id.

Initials of Deputy Clerk jd

---

[2] "[A] dismissal with leave to amend is not an appealable decision."  WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).  "[A] plaintiff, who has been given leave to amend, may not file a notice of appeal simply because he does not choose to file an amended complaint."  Id.  "A final judgment must be obtained before the case becomes appealable."  Id. at 1137.  "[A] plaintiff may obtain an appealable final judgment by 'fil[ing] in writing a notice of intent not to file an amended complaint.'"  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064 (9th Cir. 2004) (quoting WMX Techs., 104 F.3d at 1135).  If an action is dismissed for lack of prosecution, this may limit what arguments the Ninth Circuit will consider on appeal.  Id. at 1065 ("The difference between a dismissal under Rule 12(b)(6) and one under Rule 41(b) is not merely formal. … We review a Rule 41(b) dismissal only for abuse of discretion in applying the five factors … which pertain to the propriety of the sanction, not to the merits of the underlying question (such as whether a complaint states a claim). … Yet we review a Rule 12(b)(6) dismissal de novo, reviewing directly the question whether the plaintiff has stated a claim upon which relief could be granted.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-02755-MWC-KES                                                      Date: February 14, 2025
                                                                                                                      Page 15

# TIPS FOR WRITING BETTER COMPLAINTS

### Plead "Facts" Rather than Just "Conclusions or Labels."

Your Complaint should include a label or conclusion that identifies your legal claim *and* the facts supporting it. To make sure that you have both, you need to understand the difference between them. The following examples illustrate the difference:

| Pleading Conclusions or Labels | Pleading Facts |
|---|---|
| Officer Smith used excessive force. | Officer Smith punched me in the face while I was handcuffed. |
| Nurse Jones acted with deliberate indifference. | I saw Nurse Jones at the clinic. I told her I was bleeding and she could see that I was bleeding, but she did nothing to help me until I passed out. |
| The Mayor violated my First Amendment rights. | When I posted a comment criticizing the Mayor's failure to enact police reforms, the Mayor deleted my comment and blocked me from posting future comments. |
| The officers conducted an unreasonable search. | The officers had a warrant to search for a stolen car, but they searched areas of my house where they knew they would not find a stolen car. They searched all my kitchen cabinets and drawers. |
| Defendant injured me. Defendant assaulted me. | Defendant kicked me in the shin, causing me to trip and break my wrist. |

Imagine that you hired a group of actors to reenact the wrongdoing that happened to you. If you only gave them the information in left-hand column, then they could not act out the scene. If you gave them the information in the right-hand column, then they would know how to act out the scene. As a general rule, you should include enough facts in your Complaint that an actor reading it could act out what happened to you.

### Identify Who Did What.

One way to identify who did what is to avoid using "passive" verbs. Consider these two sentences, the first of which uses a passive verb:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-02755-MWC-KES                                     Date: February 14, 2025
                                                                   Page 16

> I was hit by the ball.
>
> My brother hit me with the ball.

The first sentence does not say who hit me. The second sentence, however, reveals that my brother is the person who hit me. Allegations in a complaint should be phrased like the second sentence. If you do not know the name of the person who acted wrongfully, then you can refer to them as "Doe." For example, you might refer to two unknown correctional officers as "CO Doe 1" and "CO Doe 2."

Another way to identify who did what is to use particular a Defendant's name rather than a group pronoun (like "they") or lumping all the Defendants together. For example:

| **Unclear Who Did What** | **Clear Who Did What** |
|---|---|
| Defendants searched my cell and took my property. | CO Smith and CO Jones searched my cell. When I came back, everything was out of place and my radio was gone. I believe one of them took it. |
| They refused my request for Kosher meals. | I submitted a request for Kosher meals and was interviewed by the chaplain. I later received a written denial of my request signed by Sgt. Smith. |
| I was denied necessary medical equipment. | I told Dr. Jones that my feet hurt and requested that she authorize orthotic inserts for my shoes, but she refused to do so. |